IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**PANCAKES, BISCUITS AND MORE, LLC,**
**d/b/a GOLDEN ANGELS CABARET,**

        Plaintiff,

v.                                                     Civil Action No. 2:13-CV-57
                                                     (Bailey)

**THE PENDLETON COUNTY COMMISSION,**

        Defendant.

<u>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Presently pending before this Court is Plaintiff Pancakes, Biscuits and More, LLC, d/b/a Golden Angels Cabaret's Motion for Summary Judgment [Doc. 16], filed on December 13, 2013.  Defendant, the Pendleton County Commission, filed its Response in Opposition [Doc. 18] on January 3, 2014; Plaintiff filed its Reply [Doc. 21] on January 13, 2014.  This matter is now ripe for decision.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment **[Doc. 16]** will be **DENIED**, and this Court will **GRANT** summary judgment in favor of defendant.

**I.**      <u>**Facts**</u>

Golden Angels Cabaret is a strip club, operated by plaintiff Pancakes, Biscuits and More, located in Pendleton County, West Virginia.  The West Virginia Code grants county commissions the authority to regulate strip clubs and other businesses offering "exotic entertainment," defined as any "live entertainment, dancing, or other services conducted

by persons while nude or seminude in a commercial setting for profit." W. Va. Code § 7-1-3jj(a)(1).

Pursuant to the authority granted it under § 7-1-3-jj, on April 19, 2005, defendant adopted an Ordinance Regulating the Location of Businesses Offering Exotic Entertainment [Doc. 16-1] during a public hearing. The minutes of the public hearing regarding the Ordinance state in full:

> An Ordinance regulating the location of a business offering exotic entertainment and related activities to promote the health, safety, morals, and general welfare of the citizens of Pendleton County was brought up for second reading this day, and adopted by unanimous vote of the Commission.

[Doc. 18-3 at 2]. Defendant contends that "comments expressing concern about the secondary effects of exotic entertainment establishments in the county" were made at the meeting, although there is no record of same in the meeting minutes. [Doc. 18-4 at 2]. Defendant neither conducted nor reviewed any studies regarding the secondary effects of exotic entertainment businesses before adopting the Ordinance. *Id.* However, defendant submits that its members had personal knowledge of such secondary effects, as in November 1999, Pendleton County's then-lone strip club, the Cadillac Ranch, closed following its owner's indictment on multiple criminal charges.[1] *Id.*; [Doc. 18-5].

Under the Ordinance, an exotic entertainment business may not be located within 2,500 feet of a church, school, park, daycare center, or residence, and may not be located within 2,000 feet of either a private club or bar serving alcohol or another sexually oriented

---

[1] Lawrence Scible, owner of the Cadillac Ranch, was ultimately convicted of eight felony drug counts, one misdemeanor count of "Maintaining a House of Ill Fame and Assignation for the Purpose of Prostitution, Lewdness, or Assignation," and two misdemeanor counts of false statements on a deed. *See* [Doc. 18-6].

2

business. [Doc. 16-1 at 8]. In addition to restricting the location of exotic entertainment businesses, the Ordinance also requires such businesses to obtain location permits; pay certain permit application and permit renewal fees; refrain from selling alcohol or permitting alcohol to be consumed on the premises; design their exteriors in accord with certain restrictions; maintain parking facilities according to certain specifications; and hire attendants to ensure no persons under the age of eighteen (18) gain entry. *See generally* [Doc. 16-1].

According to plaintiff, Golden Angels Cabaret opened for a short time in late June but subsequently closed once again for renovations. [Doc. 17 at 4]. At some point during July 2013, defendant became aware that the club was preparing to re-open for business. Concerned that the club was not compliant with the Ordinance, defendant hand-delivered a copy of same to plaintiff on July 25, 2013. [Doc. 18 at 3–4]. Defendant alleges, and plaintiff does not deny, that Golden Angels Cabaret is in violation of several provisions of the Ordinance, to wit: plaintiff failed to obtain a location permit and to pay required permitting fees; the club is located within 2,500 feet of a residence; the club purports to allow consumption of alcohol on the premises; and the club's large exterior signage violates the Ordinance's signage restrictions. [Doc. 18-7 at 2]. Nevertheless, plaintiff proceeded with plans to open Golden Angels Cabaret for business on August 1, 2013. *Id.*

## II. **Procedural History**

Consequently, on August 1, 2013, defendant filed a Verified Motion and Complaint for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction [Doc. 5-2] against plaintiff in the Circuit Court of Pendleton County, West Virginia, alleging violations of the Ordinance and requesting injunctive relief. The Circuit Court issued a

temporary restraining order against plaintiff that same day. [Doc. 18 at 4]. On August 5, 2013, the Circuit Court held a hearing on the matter, during which plaintiff informed the court that it intended to challenge the validity of the Ordinance. [Doc. 18-7 at 1]. Following the hearing, the Circuit Court entered its August 6, 2013[2] Order [Doc. 18-7] preliminarily enjoining plaintiff "from conducting nude dancing; seminude dancing; bikini clad dancing or similar activities . . . until the matter is fully adjudicated during the permanent injunction hearing." [Doc. 18-7 at 2]. The Circuit Court continued the matter pending scheduling of a permanent injunction hearing. *Id.*

Rather than scheduling a permanent injunction hearing in the pending state proceeding, on August 13, 2013, plaintiff initiated the instant lawsuit by filing its Complaint [Doc. 1] in this Court,[3] contending that the Ordinance is an unconstitutional restriction on plaintiff's freedom of speech. Count I of plaintiff's Complaint seeks a declaratory judgment that the Ordinance is invalid under both the First Amendment of the United States Constitution and Article III, Section Seven of the West Virginia Constitution. Count II seeks a permanent injunction preventing defendant from enforcing the Ordinance.

## III. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact

---

[2] The parties refer to this Order as the August 5, 2013 Order. While the preliminary injunction hearing was held before the Circuit Court on August 5, 2013, the Order itself was not entered until August 6, 2013. *See* [Doc. 18-7 at 1, 3].

[3] On October 10, 2013, the Circuit Court of Pendleton County entered an Order staying all state proceedings until resolution of the instant proceeding. [Doc. 18-8 at 1–2]. As such, this Court need not consider whether abstention under ***Younger v. Harris***, 401 U.S. 37 (1971), and its progeny would be appropriate at this juncture.

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986). Thus, a summary judgment motion should be granted if the nonmovant fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. **Celotex**, 477 U.S. at 323. That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for trial. **Id.** at 323–24. The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. **Anderson v. Liberty Lobby**, 477 U.S. 242, 252 (1986).

A court hearing a summary judgment motion has the power to grant summary judgment *sua sponte* in favor of the nonmovant when no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law. *See, e.g.*, **Ortega Candelaria v. Orthobiologics LLC**, 661 F.3d 675, 681 n.10 (1st Cir. 2011); **Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp.**, 419 F.3d 181, 190 (2d Cir. 2005); **Jones v. Union Pacific R.R. Co.**, 302 F.3d 735, 740 (7th Cir. 2002); **Burlington N. R.R. Co. v. Omaha Public Power Dist.**, 888 F.2d 1228, 1231 n.3 (8th Cir. 1989); **Eddy v. Biddle**, 2013 WL 66929, *19 (N.D. W. Va. Jan. 4, 2013); **Helton v. Good**, 208 F. Supp. 2d 597, 608 (W.D. N.C. 2002), *aff'd in part, rev'd in part on other grounds*, 330 F.3d 242 (4th Cir. 2003). In determining whether entry of *sua sponte* summary judgment in favor of a nonmovant is appropriate, the key inquiry is whether the losing party was on notice that he or she had to marshal the evidence necessary to withstand summary judgment. **Travelers**,

419 F.3d at 190.  Summary judgment in favor of the non-movant can be particularly apt where discovery has concluded and the factual record has been fully developed.  *Id.*; *Eddy*, 2013 WL 66929 at *19.

      **B.**    **First Amendment to the United States Constitution**

The First Amendment protects not only verbal speech, but also freedom of expression through communicative conduct.  *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  Expressive conduct, however, is not always fully protected: where the conduct contains both "speech" and "nonspeech" elements, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on the protected speech.  *Id*.  The level of constitutional scrutiny applicable to a regulation of expressive conduct therefore turns on the government's purpose in enacting the regulation.

Where the government's purpose is "content-neutral," or unrelated to the content of the conduct, "intermediate scrutiny" applies: the regulation must serve a substantial government interest and may restrict expression no more than is essential to the furtherance of that interest.  *Id.* at 377.  Where the government's purpose is "content-based," or intended to suppress the conduct itself, the regulation must survive "strict scrutiny": the regulation is presumptively invalid, and violates the First Amendment absent a compelling state interest in its enforcement.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality) (citing *Texas v. Johnson*, 491 U.S. 397, 403 (1989)).

Some arguably "content-based" regulations of expressive conduct, however, can escape strict scrutiny where the purpose of the regulation is not to ban the conduct entirely, but merely to restrict the time, place, and manner of its presentation.  *City of Renton v.*

*Playtime Theatres, Inc.*, 475 U.S. 41, 46–47 (1986).  Although such regulations are "content-based" in that they define the regulated conduct by its content, they are "content-neutral" in that they "are *justified* without reference to the content of the regulated speech," and thus are constitutionally acceptable so long as they serve a substantial government interest and do not unreasonably limit alternative avenues of communication.  *Id.* at 47, 48 (internal citations omitted).

The **Renton** test is in essence "intermediate scrutiny" restated; the key difference between the **O'Brien** (content-neutral) and **Renton** (time, place, and manner) doctrines is the type of evidentiary showing required.  See, e.g., **Richland Bookmart, Inc. v. Knox Cnty.**, 555 F.3d 512, 521–22 (6th Cir. 2009) (citing **Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.**, 337 F.3d 1251, 1264 (11th Cir. 2003)). While justification of a wholly content-neutral regulation "require[s] no evidentiary showing at all that the threatened harm was real," **Pap's A.M.**, 529 U.S. at 299, justification of a time, place, and manner regulation requires the government to show "a reasonable evidentiary basis for concluding that its regulation would have the desired effect."  **729, Inc. v. Kenton Cnty. Fiscal Court**, 515 F.3d 485, 491 (6th Cir. 2008) (citing **Renton**, 475 U.S. at 51–52; **Alameda Books**, 535 U.S. at 438, 439 (plurality); *id.* at 449 (Kennedy, J., concurring in the judgment)).

### C. Article III, Section Seven of the West Virginia Constitution

Article III, Section Seven of the West Virginia Constitution states:

> No law abridging the freedom of speech, or of the press, shall be passed; but the legislature may by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.

W. Va. Const. art. III, § 7.  Article III, Section Seven provides protections similar to those provided by the First Amendment to the United States Constitution.  *See* ***Wheeling Park Comm'n v. Hotel & Restaurant Employees, Int'l Union, AFL-CIO***, 198 W. Va. 215, 220–21 & n.6 (1996).

In considering the validity of time, place, and manner regulations under the West Virginia Constitution, the Supreme Court of Appeals of West Virginia has stated:

> [I]f the government's restriction is found in a content-neutral statute, ordinance, or regulation, then the statute's, ordinance's, or regulation's constitutionality would be assessed by determining whether the time, place, and manner restrictions were "narrowly tailored to serve a significant government interest, and [left] open ample alternative channels of communication."

***Wheeling Park Comm'n***, 198 W. Va. at 226 (quoting ***Perry Educ. Ass'n v. Perry Local Educators' Ass'n***, 460 U.S. 37 (1983)).  Thus, the test applicable to analysis of a time, place, and manner regulation is the same under both the federal and state constitutional analyses.

## IV. Discussion

As the Supreme Court has repeatedly held, exotic entertainment is a type of expressive conduct entitled to limited constitutional protection.  ***Barnes v. Glen Theatre, Inc.***, 501 U.S. 560, 565–66 (1991).  Because the Ordinance at issue regulates exotic entertainment, it therefore regulates expressive (albeit low-value[4]) conduct entitled to at least some constitutional protection.

---

[4] *See* ***Renton***, 475 U.S. at 49 n.2 ("It is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate . . ." (quoting ***Young v. American Mini Theatres***, 427 U.S. 50 (1976))).

8

### A.  Nature of the Ordinance

Thus, this Court must first determine whether the Ordinance is (1) a content-neutral regulation that incidentally burdens expression; (2) a content-based regulation intended to suppress expression; or (3) a time, place, and manner regulation that defines the regulated activity by its content, but targets the secondary effects of the activity rather than the activity itself.

Plaintiff argues that the Ordinance is a content-based regulation that should be subject to strict scrutiny. Plaintiff is incorrect. The preamble to the Ordinance states:

> WHEREAS, there is convincing evidence that adult entertainment businesses . . . have a deleterious effect on . . . the surrounding . . . areas . . . , causing increased crime and the depreciation of property value; and
> WHEREAS, it is recognized that adult entertainment businesses . . . contribut[e] to blight and downgrad[e] the quality of life in the adjacent areas; and
> WHEREAS, the Pendleton County Commission desires to minimize and control these adverse effects and thereby protect the health, safety, and welfare of the citizenry . . . ; and
> WHEREAS, it is not the intent of this Ordinance to suppress any speech related activities protected by the First Amendment but to enact a content neutral Ordinance which addresses the secondary effects of adult entertainment businesses . . . [. . .]

[Doc. 16-1 at 1]. The stated purpose of the Ordinance is to "address[ ] the secondary effects of adult entertainment businesses." Rather than banning all exotic entertainment within Pendleton County, the Ordinance regulates exotic entertainment businesses in four general ways: it requires that such businesses be licensed both to initially open for business and on an annual basis thereafter; it restricts the places in which such businesses may be located; it sets forth certain exterior design requirements; and it prohibits certain activities, such as selling alcohol on the premises and admitting persons under the age of

18.

In this Court's opinion, the Ordinance is properly analyzed as a time, place, and manner regulation. While the Ordinance clearly treats exotic entertainment businesses differently from other types of businesses, the Ordinance does not aim to suppress exotic entertainment, but rather to control the secondary effects of exotic entertainment businesses on the community.

To pass constitutional muster, the Ordinance must therefore satisfy ***O'Brien/Renton*** intermediate scrutiny: the Ordinance must serve a substantial government interest; defendant must demonstrate that it had a reasonable evidentiary basis for concluding that the Ordinance would have the desired effect; and the Ordinance must allow for reasonable alternate avenues of communication. *See* ***Renton***, 475 U.S. at 46–47, 50. As set forth below, this Court holds that the Ordinance meets the ***O'Brien/Renton*** standard.

### B. Substantial Government Interest

The first question is whether the Ordinance serves a substantial government interest; plaintiff rightly concedes this point, as it is well settled that the state has a substantial interest in controlling the adverse secondary effects of sexually oriented businesses. *See, e.g.*, ***Alameda Books***, 535 U.S. at 434; ***Renton***, 475 U.S. at 54; ***Pap's A.M.***, 529 U.S. at 296; ***Richland Bookmart***, 555 F.3d at 524.

### C. Sufficiency of the Evidence

Next, this Court must determine whether defendant marshaled constitutionally sufficient evidence regarding the secondary effects of exotic entertainment when enacting the Ordinance. As explained above, defendant must have relied on evidence it "reasonably

10

believed to be relevant" to demonstrate a connection between exotic entertainment and the problem of secondary effects. *Alameda Books*, 535 U.S. at 441–42; *Renton*, 475 U.S. at 51–52; *Peek-A-Boo*, 337 F.3d at 1266. However,

> this is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Alameda Books*, 535 U.S. at 438–39.

Plaintiff's argument appears to be that defendant's evidence did not fairly support defendant's rationale for the Ordinance; unfortunately, plaintiff's rather spare briefing makes contradictory factual allegations on this point. On the one hand, plaintiff contends that "the County Commission in its admissions did not consider any experiences or studies to determine if the ordinance would accomplish the Commissions [sic] goals"; on the other hand, plaintiff states that the Ordinance "makes certain findings and conclusions that are supported by information presented at the Commission's meeting," but fails to elaborate regarding said findings, conclusions, or information presented. [Doc. 17 at 6, 7]. As for defendant, it concedes that no studies regarding secondary effects were conducted or consulted in adopting the Ordinance, but contends that it relied upon "prior knowledge of the effects of the Cadillac Ranch Strip Club on the community" in so doing. [Doc. 18 at 8].

Discovery in this matter closed on December 1, 2013. *See* [Doc. 9]. The record contains, in total, the following information regarding evidence considered prior to adoption of the Ordinance: (1) the April 19, 2005 Pendleton County Commission meeting minutes,

11

which state only that the Ordinance was brought up for second reading and adopted by unanimous vote[5]; (2) Defendant's Responses to Requests for Admission, which primarily reiterate defendant's knowledge of the Cadillac Ranch, but do further state that "comments expressing concern about the secondary effects of exotic entertainment establishments" were heard at the April 19, 2005 meeting; and (3) the text of the Ordinance itself. [Docs. 18-1, 18-3, 18-4].

This evidentiary record is extremely thin. *See, e.g.*, **Alameda Books**, 535 U.S. at 430 (city relied on 1977 study of adult businesses); **Pap's A.M.**, 529 U.S. at 297 (city expressly referenced explanatory judicial decision in the text of its ordinance); **D.H.L. Assoc., Inc. v. O'Gorman**, 199 F.3d 50, 57–58 (1st Cir. 1999) (although evidence of evaluation of secondary effects "did not appear explicitly in town meeting minutes," testimony of chairman of the Board of Selectmen regarding research conducted by the city, combined with a document evidencing public discussion prior to the ordinance's enactment, sufficed); **Hickerson v. City of New York**, 146 F.3d 99, 104–05 (2d Cir. 1998) (city relied upon "extensive" record including "numerous" studies); **SDJ, Inc. v. City of Houston**, 837 F.2d 1268, 1274 (5th Cir. 1988) (city formed a Committee on Sexually Oriented Businesses to hear testimony and consider studies from other cities); **Ben's Bar, Inc. v. Village of Somerset**, 316 F.3d 702, 725 (7th Cir. 2003) (city relied on judicial decisions, studies from 11 cities, findings reported in other legislation, and Attorney General white paper; *see also* **Ranch House, Inc. v. Amerson**, 238 F.3d 1273, 1283 (11th Cir. 2001) ("[C]ourts still have insisted on some kind of a minimal evidentiary showing, even if that showing consists of

---

[5] *See* section I, *supra*.

nothing more than proof that the legislature reasonably relied on findings reported elsewhere."); ***DiMa Corp v. Town of Hallie***, 185 F.3d 823, 829–31 (7th Cir. 1999) (stating that "conclusory assertions" in the text of an ordinance are insufficient on their own because "they are not 'evidence' as the Court required in *Renton*."). But see ***Peek-A-Boo***, 337 F.3d at 1268 ("a municipality's own findings" may be sufficient); ***Sammy's of Mobile, Ltd. v. City of Mobile***, 928 F. Supp. 1116, 1122 (S.D. Ala. 1996), *affirmed* 140 F.3d 993 (11th Cir. 1998) ("If legislative findings are at all necessary . . . the requirement is minimal and easily met by the city's findings set forth in the preamble to the ordinance.").

      Here, defendant examined no studies; relied upon no judicial decisions in the text of the Ordinance; formed no committees; and conducted no investigations. No documents evidencing public discussion were admitted into the record. The preamble to the Ordinance never explicitly makes "findings," although it does state that "there is convincing evidence that adult entertainment businesses, because of their very nature, have a deleterious effect" and asserts that "the Pendleton County Commission desires to minimize and control these adverse effects." [Doc. 16-1 at 1]. Defendant, in sum, is asking this Court to hold that the Pendleton County commissioners' memory of a single strip club owner's 1999 criminal indictment, plus the conclusory statements contained in the text of the preamble to the Ordinance, comprise constitutionally sufficient evidence to support its adoption.

      The Fourth Circuit has twice flirted with the question how little evidence is too little evidence to support adoption of an ordinance regulating sexually oriented businesses, although the issue has yet to be squarely presented. In ***Giovani Carandola, Ltd. v. Bason***, 303 F.3d 507 (4th Cir. 2002), the Fourth Circuit heard a First Amendment overbreadth challenge to a state statute and its concomitant regulations prohibiting certain

types of sexually suggestive entertainment. *Id.* at 509. In holding the state restrictions overbroad, the court subjected the state restrictions to intermediate scrutiny. *Id.* at 515. The state argued that its restrictions furthered the state's interest in controlling the negative secondary effects of adult entertainment; the record, however, was totally devoid of evidence demonstrating same. In considering whether the government had nevertheless met its evidentiary burden, the Fourth Circuit stated:

> The Commission has produced no evidence—either current or otherwise—of harmful secondary effects . . . . This failure might not pose a problem if the challenged restrictions applied only to bars and clubs that present nude or topless dancing. Such entertainment has "a long history of spawning deleterious effects," . . . and in most cases a city or state need carry only a minimal burden to demonstrate its interest in regulation of such activity. In particular, where "nude dancing . . . is of the same character as the adult entertainment at issue in *Renton*, *Young v. American Mini Theatres, Inc.*, and *California v. LaRue*," a governmental entity may rely on the "evidentiary foundation" set forth in those cases to "conclude that such nude dancing [i]s likely to produce the same secondary effects" in its jurisdiction unless the plaintiff produces clear and convincing evidence to the contrary.

*Id.* at 515–16; *see also* **Legend Night Club v. Miller**, 637 F.3d 291, 299 (4th Cir. 2011) (quoting the above-excerpted language from *Carandola*, again in the context of an overbreadth case). Here, the challenged restriction is applicable only to bars and clubs that present nude or seminude entertainment, as contemplated by the Fourth Circuit's discussion. *See* [Doc. 16-1 at 2]. This Court therefore feels constrained to hold, in light of **Carandola** and **Legend Night Club**, that defendant has met its evidentiary burden.

    **C.**    **Reasonable Alternate Avenues of Communication**

Finally, turning to the question whether the Ordinance allows for reasonable alternative avenues of communication, this Court notes that defendant states, and plaintiff does not deny, that there are "numerous parcels of real estate for sale and lease"

throughout Pendleton County upon which Golden Angels Cabaret could be alternatively be located. *See* [Doc. 18 at 6].

Further, the Ordinance is narrowly tailored to apply only to those exotic entertainment businesses which produce the adverse secondary effects defendant sought to control. *See* [Doc. 16-1 at 10] (enumerating exemptions). To the extent plaintiff articulates a First Amendment argument regarding the content of the regulations, it is rejected.[6] *See, e.g.*, **Renton**, 475 U.S. at 51 ("Cities may regulate adult theaters by dispersing them, . . . or by effectively concentrating them . . . . It is not our function to appraise the wisdom of the city's decision.") (internal quotations omitted); **Richland Bookmart**, 555 F.3d at 532 (holding that prohibition of alcohol consumption in adult entertainment venues is a reasonable restriction); **Deja Vu of Nashville, Inc. v. Metro. Gov't**, 274 F.3d 377, 395 (6th Cir. 2001) (upholding a $500 license fee and a $100 permit fee where the fees were reasonably related to the expenses incident to the administration of the ordinance). Thus, the Ordinance does not deny plaintiff the reasonable opportunity to open and operate Golden Angels Cabaret within Pendleton County. Nothing more is required.[7] *See* **Renton**, 475 U.S. at 54.

---

[6] Plaintiff's argument regarding the content of the Ordinance consists, virtually in entirety, of a laundry list of its provisions. *See* [Doc. 21 at 2].

[7] Plaintiff further suggests that defendant exceeded its regulatory authority in adopting the Ordinance. West Virginia Code § 7-1-3jj gives a county commission the power to "adopt an ordinance *that limits the areas of the county in which a business may offer 'exotic entertainment.'*" W. Va. Code § 7-1-3jj(b) (emphasis added). The text of § 7-1-3jj is silent regarding a commission's power to restrict exotic entertainment in other ways, such as by prohibiting the sale or consumption of alcohol and regulating signage and parking. Defendant states that "other aspects regarding exotic entertainment venues may be regulated according to law," but fails to cite any West Virginia law allowing regulation of these "other aspects." [Doc. 18-4 at 1]. This Court therefore questions whether defendant

15

Consequently, this Court holds that the Ordinance offends neither the First Amendment to the United States Constitution nor Article III, Section Seven of the West Virginia Constitution. As such, this Court declines to provide plaintiff with the declaratory and injunctive relief sought.

Defendant has made no formal motion for summary judgment in its favor, although defendant does state in its Response that "summary judgment should be granted on behalf of the Defendant." [Doc. 18 at 10]. In the opinion of this Court, no disputed issues of material fact remain, and judgment for defendant would be appropriate under the circumstances. Plaintiff raised the constitutional issues in this matter and fully briefed its position on same; plaintiff has therefore had a full and fair opportunity to present all of its evidence to this Court. See **Travelers**, 419 F.3d at 190–91; **Eddy**, 2013 WL 66929 at *19.

## **CONCLUSION**

Accordingly, Plaintiff's Motion for Summary Judgment **[Doc. 16]** should be, and is hereby, **DENIED**. Summary judgment is **GRANTED** in favor of Defendant. Plaintiff's Complaint **[Doc. 1]** is hereby **DISMISSED**, this matter is **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is directed to enter judgment in favor of Defendant.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record herein.

---

had the authority to pass the Ordinance under West Virginia law. As that question implicates neither the First Amendment nor Article III, Section Seven of the West Virginia Constitution, however, this Court feels it would be more appropriately resolved by the Circuit Court of Pendleton County.

**DATED**: January 24, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE